CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 07 2008

JOHN F. CORCORAN, CLERK
BY: S. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 5:06-cr-00015 |
| | ) | Civil Action No. 5:08-cv-80025 |
| | ) | |
| v. | ) | <u>2255 MEMORANDUM OPINION</u> |
| | ) | |
| | ) | By: Hon. Glen E. Conrad |
| KIMBERLY DAWN LITTEN. | ) | United States District Judge |

Petitioner Kimberly Dawn Litten, a federal inmate proceeding <u>pro se</u>, brings this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Litten alleges in her § 2255 motion that counsel provided ineffective assistance in several respects. Litten further appears to allege that her guilty plea was not knowing and voluntary. Respondent filed a motion to dismiss on April 21, 2008. The court notified Litten of respondent's motion as required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and respondent's motion is now ripe for disposition. Upon review of the submissions of the parties and the underlying criminal record, Criminal Case No. 5:05-cr-00015, the court finds that Litten waived her current claims in her plea agreement. Accordingly, the court finds that respondent's motion to dismiss must be granted.

I.

On May 24, 2006, Litten was named in a seven-count superseding indictment in the Western District of Virginia that charged her with conspiring to distribute, or possessing with the intent to distribute, five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Count One); possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c) (Count Two); and knowingly and intentionally possessing fifty or more grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. § 2 and

21 U.S.C. § 841(a)(1). On November 22, 2006, Litten appeared before United States Magistrate Judge B. Waugh Crigler and pleaded guilty to Counts One and Two of the superseding indictment. By Report and Recommendation entered November 30, 2006, Judge Crigler recommended that the court accept the plea of guilty. No objections were filed. Thus, the court accepted Litten's plea on December 19, 2006.

Prior to the sentencing hearing, the United States filed a motion for a downward departure, pursuant to 18 U.S.C. § 3553(e) and United States Sentencing Commission Guidelines Manual § 5K1.1, based on Litten's substantial assistance to the United States in the investigation and prosecution of several cases. The United States recommended that, based on Litten's minimal assistance, she be given a sentence of 126 months incarceration, "representing a reduction of thirty percent from the bottom of her recommended guideline range absent this motion." By final judgment order, entered February 12, 2007, the court sentenced Litten to 52 months incarceration as to Count One and 60 months incarceration as to Count Two, to be served consecutively, resulting in a total term of 112 months incarceration.

Litten did not appeal her conviction or sentence and filed the current § 2255 motion on February 7, 2008, alleging a myriad of ineffective assistance of counsel claims. While Litten's allegations are confusing and repetitive, it appears that she alleges that counsel was ineffective in (1) failing to investigate evidence and potential witness; (2) failing to be present during the Presentence Report investigation; (3) failing to discuss the Presentence Investigative Report with Litten; (4) failing to "know the law" and thoroughly research the law; (5) failing to ask for an extension of time when counsel was unprepared; (6) lying to Litten about liability possibilities and the elements of the crimes that she committed; (7) pressuring Litten to plead guilty; (8) admitting aggravating factors

2

that resulted in a longer sentence; (9) failing to negotiate as directed by Litten; (10) failing to properly advise Litten; and (11) acting as a "mere spectator" at the sentencing hearing.

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 (2006). Litten bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965); Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

## III.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." Id. at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn

3

statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy – specifically, whether the district court questioned the defendant about the . . . waiver – the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the

4

waiver.[1] Attar, 38 F.3d at 732; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); see also Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Litten's guilty plea and waiver of § 2255 rights, the court must determine whether each of her § 2255 claims falls within the scope of that waiver.

Here, the record fully establishes that Litten knowingly and intelligently entered a valid guilty plea and waived her right to collaterally attack her sentence, including any proceeding brought under § 2255. In her plea agreement, Litten acknowledged that counsel informed her of the nature of the charges and the elements of the charges and that she "had all of [her] rights explained," but that she was "knowingly waiv[ing] and giv[ing] up these valuable constitutional rights." (Plea Agreement at 2.) Litten further waived "any claim that I may have for ineffective assistance of counsel known and not raised by me with the Court at the time of sentencing." (Plea Agreement at 11.) Moreover, Litten specifically agreed to "waive [her] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon [her] by the Court." (Plea Agreement at 7.) The language and meaning of the § 2255 waiver is clear and unmistakable, and both Litten and her attorney represented by their initials and signatures to the plea agreement that Litten had been fully advised of, and understood, its terms. Additionally, Litten does not dispute that she understood the collateral attack waiver provision, nor does she claim that the waiver provision of that agreement is invalid.[2]

---

[1] In Lemaster, the court implicitly acknowledged that these discrete claims would also be considered outside the scope of a valid plea agreement waiver of § 2255 rights. 403 F.3d at 220 n.2.

[2] Litten maintains that she did not see the plea agreement "until she was being sentenced" and that counsel "did not go over [the] plea agreement" with her. (§ 2255 Mot. at 5.) She further alleges that she "was not told by counsel that [she] was signing all [her] rights away and did not know this until [she] received [her] plea agreement in the mail from [her] mother." (§ 2255 Mot. at 5.) Litten's allegations are clearly belied by the record as she indicated at the November 22, 2006 guilty plea hearing that, "after consulting with [counsel]," it was her intent that the court accept her

5

Moreover, pursuant to Federal Rule of Criminal Procedure 11, before accepting the guilty plea, Magistrate Judge Crigler engaged in a plea colloquy with Litten on November 22, 2006.[3] During the plea colloquy Litten indicated to the court that she was born on December 17, 1970, that she had completed the ninth grade, that she could read, write, and understand English, that she did not suffer from any physical or mental condition that hampered her ability to understand the courtroom proceedings, and that she was not under the influence of any drugs, alcohol, or medicines of any type.[4] The court reviewed with Litten the constitutional rights she forfeited by pleading guilty, and Litten indicated that she understood the rights she was giving up. The court also noted that Litten would still be bound by her plea agreement even if the sentence imposed was more severe than she expected.[5] Litten indicated that she understood.

Litten affirmed that she had been given ample opportunity to consult with her counsel, that she was fully satisfied with the representation and advice given by her counsel, and that counsel had been effective in representing her. Litten declined comment when the court asked her if there was

---

guilty plea. (Sent. Tr., Nov. 22, 2006, at 4.) Litten answered in the affirmative when the court questioned her as to whether her initials were on each page of the plea agreement and whether her signature was on the final page of the agreement. At no time during the hearing did Litten inform the court that she had not seen the plea agreement or that she did not understand that provisions. Indeed, Litton was even provided with the opportunity to address the court at the conclusion of the hearing. Regardless, the court thoroughly reviewed the main provisions of the plea agreement with Litton during the hearing. Thus, Litten's unsupported claims are insufficient to render the plea agreement invalid.

[3] Litten signed a waiver on that same date indicating that she waived conduct of a Rule 11 hearing before this court and consented to such a hearing before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(3).

[4] Litten complains that at the time of the plea agreement and colloquy, she was told by counsel to "lie to [the] court concerning mental and drug abuse." (§ 2255 Mot. at 5.) However, Litten fails to allege that she was under the influence of any drugs or that any mental condition impaired her at the time of the hearing. Moreover, Litten fails to adequately allege that she did not understand the plea agreement or any of the provisions nor does she contend that she did not understand any of the information provided at the plea colloquy. Furthermore, Litten fails to provide any factual support for her allegation that counsel advised her to "lie" at the guilty plea hearing. Thus, such allegations are also insufficient to render her plea agreement invalid.

[5] As previously noted, Litten received a sentence substantially lower – more than thirty percent lower – than the bottom of the recommended guidelines range.

6

anything else that she wanted to say about counsel's representation. The court specifically asked Litten whether she and her counsel had discussed how the sentencing guidelines might apply to her case and Litten, again, answered in the affirmative. The court also specifically noted Litten's waiver of her right to collaterally attack the conviction. Litten denied that anyone had made any promise to her, outside the provisions of the plea agreement, or otherwise induced her to plead guilty. Magistrate Judge Crigler determined, at the conclusion of the plea colloquy, that Litten's plea was knowing and voluntary. Therefore, the court finds that Litten's representations at the plea colloquy support a finding that the waivers in the written plea agreement were knowingly and voluntarily made. Accordingly, the court concludes that Litten's waiver of her right to bring a collateral attack under § 2255 is valid and enforceable.

Finding that the waiver is valid, the court must now determine whether Litten's claims are included within the scope of the waiver. After reviewing the record, the court finds that none of the factors that the United States Court of Appeals for the Fourth Circuit applied in Attar are applicable here. See Attar, 38 F.3d at 732-33. Litten does not claim that her sentence of 112 months, which was, in fact, well below the low end of the guidelines range, exceeded the statutory maximum for the charges for which she was convicted, nor does she allege that her sentence was premised on any constitutionally impermissible factor such as race. A claim of ineffective assistance of counsel prior to or at sentencing only falls outside the scope of the collateral attack waiver if the defendant has been completely deprived of counsel. Attar, 38 F.3d at 732-33. A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims

7

do not fall outside the scope of the collateral attack waiver.[6] See Lemaster, 403 F.3d at 219-20 (finding that because defendant knowingly and voluntarily waived his right to appeal and collaterally attack his conviction, his claims that counsel was ineffective by failing to object to the PSR and in failing to move for a downward departure at sentencing were precluded from federal review). Therefore, Litten's claims fall within the scope of the plea agreement waiver and, thus, are not cognizable claims for post conviction relief in a motion brought pursuant to § 2255. Accordingly, the court will grant respondent's motion to dismiss and will deny Litten's motion for relief pursuant to § 2255.

## IV.

"Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Litten knowingly and intelligently agreed to waive her right to collaterally attack her sentence in exchange for several concessions made by the United States, and she was sentenced in the manner to which she agreed, receiving substantial benefits from the plea agreement. The United States has adhered to its part of the plea bargain. Granting Litten relief on the issues she has raised, under these circumstances,

---

[6] Even assuming that Litten's claims of ineffective assistance of counsel are excepted from the waiver in the plea agreement, they fail on the merits. Litten must prove that counsel's representation fell below "an objective standard of reasonableness" and that, but for counsel's alleged errors, there is a reasonable probability that she would not have pleaded guilty and would have insisted on going to trial. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Notwithstanding the fact that Litten declared in open court that she was satisfied with the representation of her attorney, Litten fails to even allege, must less demonstrate that she would have rejected the plea agreement and insisted on going to trial absent counsel's alleged errors. Moreover, Litten provides absolutely no factual support for her allegations that counsel was ineffective. Litten does not indicate what evidence or witnesses counsel should have investigated, how counsel's failure to be present during the presentence investigation impacted her, what "law" counsel should have researched, how counsel was unprepared, what counsel lied to her about, how counsel pressured her to plead guilty, what aggravating factors counsel admitted, how counsel should have negotiated, or how counsel should have advised her. Finally, many of Litten's claims are completely contradicted by the record and Litten's sworn statements made to the court.

8

would unfairly deny the United States an important benefit of its bargain. Accordingly, the court will grant the motion to dismiss. An appropriate Order shall be issued this day.

The Clerk of the Court is directed to send copies of this Memorandum Opinion and accompanying Order to petitioner and counsel of record for respondent.

**ENTER:** This 7th day of July, 2008

_____
United States District Judge